UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID WATSON SCOTT,

      Plaintiff,

v.                                     Case No. 8:19-cv-1642-T-30CPT

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

This cause is before me on referral for consideration of the *Defendant's Motion to Dismiss Plaintiff's Petition for Writ of Mandamus* (Doc. 16), the Plaintiff's response in opposition (Doc. 17), and the Defendant's reply (Doc. 21). For the reasons discussed below, I respectfully recommend that the Defendant's motion be granted.

I.

The facts material to this case do not appear to be largely in dispute. Plaintiff David Scott was gainfully employed as a heavy equipment mechanic until approximately ten years ago, when he developed uncontrollable gross tremors. (Doc. 6 at 1-2). He was subsequently deemed disabled by the Social Security Administration (SSA) and began receiving monthly Social Security Income (SSI) benefit payments of

about $950.  *Id*. at 2-3.  In 2014 or early 2015, however, Scott was jailed on criminal charges, and his benefits were suspended.  *Id*.

In July 2015, Scott was released from custody, placed on probation, and ordered to reside at an assisted living facility.  *Id.* at 3.  That same month, he re-applied and was approved for the resumption of SSI benefits.  *Id*.  Scott's benefit checks were thereafter sent to his attorney's post office box, cashed by the attorney, and the cash then given to Scott.  *Id*. at 4.

In December 2015, Scott was charged with a probation violation and was again imprisoned.  *Id.* at 4-5.  Scott's attorney initially deposited Scott's benefits checks (which continued to be sent to the attorney's post office box) into a trust account but, after several months, elected to return the checks uncashed to the SSA when it became clear that Scott might not be released for some time.  *Id.* at 5.

In October 2016, while Scott was still incarcerated on the probation violation, the SSA issued a letter informing him that he was not entitled to the benefit payments he had been receiving during the period of his imprisonment and had been overpaid as a result.  *Id.* at 6; (Doc. 16 at 2).  On December 16, 2016, the agency issued another letter advising Scott that his overpayment had been reduced to account for a benefits check that had been returned to the agency.  (Doc. 16 at 2).

In May 2017, the state dismissed the probation violation, and Scott was released from jail.  (Doc. 6 at 6).  When Scott subsequently went to an SSA Office to re-apply for benefits, he was told (for the first time, he alleges) that the SSA was deducting his checks due to the overpayment.  *Id.* at 7.  According to Scott, he sought

reconsideration of that overpayment determination in July 2017 and again in September and October 2017, but the SSA denied that reconsideration request as untimely via a letter he received on January 3, 2018. *Id.* at 8-12. In that same letter, the SSA also informed Scott that, although his appeal was belated, it would nonetheless "review the information [he] sent in with [his] request for reconsideration and send . . . another letter of [the SSA's] finding." *Id.* at 13.

Scott maintains he did not receive any such additional letter and, as a result, he filed a lawsuit in February 2018, contending that the SSA had wrongfully denied his reconsideration request. *Id.*; *Scott v. Comm'r of Soc. Sec.*, No. 8:18-cv-392-T-23TGW (M.D. Fla. 2018) (*Scott I*). The Court dismissed that case on jurisdictional grounds, however, because Scott had failed to exhaust his administrative remedies prior to filing suit as required under 42 U.S.C. § 405. *Scott I* at (Docs. 19, 20). The Court noted in this regard that section 405 authorizes judicial review of agency action only where the agency has made a "final decision" after a hearing, which had not occurred. *Id.* at (Doc. 19 at 9-10) (citing 42 U.S.C. §§ 405(g), (h)).

While *Scott I* was still pending, Scott formally sought an ALJ hearing with the SSA on October 18, 2018. (Doc. 6 at 13-14; Doc. 9 at 5). When the SSA did not respond to that request (as Scott alleges) (Doc. 6 at 14), he initiated this action in July 2019 by filing a *Petition for Writ of Mandamus* (Petition), seeking a Court order directing the Commissioner to hold a hearing regarding the denial of his SSI benefits (Doc. 6).[1]

---

[1] Scott simultaneously filed additional exhibits to his Petition (Doc. 8), as well as a memorandum in support of his mandamus action (Doc. 9).

In support of that request, Scott outlines in his Petition the series of events discussed above involving his incarceration, his unsuccessful efforts to reinstate his benefits, and his alleged difficulties with the SSA mailing notices to him at incorrect addresses, providing him with misinformation, and failing to act in a proper manner. *See generally* (Doc. 6).

Following the filing of Scott's Petition, the SSA reopened its prior overpayment decision and, on September 6, 2019, notified Scott that, among other things, he would receive a check for the funds withheld between December 2015 and July 2017 (while he was jailed on the probation violation), and that he would also be paid $978 in monthly SSI benefits moving forward. (Doc. 16 at 5).  Three days later, on September 9, 2019, the SSA dismissed Scott's previous reconsideration request because it had completed a full audit of his record and corrected its errors.[2] *Id.*

Scott responded to these actions by the SSA by asking the agency to reconsider its decision to dismiss his reconsideration request. *Id.* at 6.  On October 21, 2019, the agency issued a notice affirming its September 9, 2019, decision. *Id.*  That notice explained that, if Scott disagreed with the SSA's determination, he had sixty days to request an ALJ hearing. *Id.*

By way of the instant motion, the Commissioner now seeks dismissal of Scott's Petition pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (Doc. 16). In support of that request, the Commissioner argues: (1) Scott fails to establish that the

---

[2] The SSA's September 6 and September 9, 2019, notifications also addressed certain additional payments the agency determined Scott was entitled to receive.

Court has subject-matter jurisdiction over his claims; (2) Scott does not show he is entitled to mandamus relief; and (3) Scott's Petition is moot in any event because the SSA has already granted him the relief he seeks. *Id.* The Commissioner includes with his motion the Declaration of Cristina Prelle, Acting Chief of Court Case Preparation and Review Branch 3 of the Office of Appellate Operations, Office of Disability Adjudication and Review, SSA (Doc. 16-1); the Affidavit of Karen Newsome, a Specialist in the SSA's Atlanta Office (Doc. 16-2); as well as the Report and Recommendation and Order in *Scott I* dismissing that action (Docs. 16-3, 16-4).

Scott opposes the Commissioner's motion to dismiss. (Doc. 19). While it does not appear he disputes the Commissioner's allegations regarding the post-Petition developments on his overpayment claim, Scott urges that the SSA has engaged in a pattern of delay that warrants the Court compelling the agency to conduct an ALJ hearing. *Id.*

With the Court's permission, the Commissioner replied to Scott's response (Doc. 21), and the matter is now fully briefed for the Court's consideration.

II.

Motions filed pursuant to Rule 12(b)(1) question the Court's jurisdiction over the subject matter of the case. Fed. R. Civ. P. 12(b)(1). Such challenges "come in two forms, 'facial' and 'factual' attacks." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citation omitted). With a facial attack, the movant contests subject-matter jurisdiction based on the allegations in the complaint. *Id.* Factual attacks, on the other hand, dispute the court's "subject matter jurisdiction in fact, irrespective of

the pleadings." *Id*.   While the court must accept the allegations as pleaded in evaluating a facial attack, it may consider extrinsic evidence in addressing a factual attack. *Id.*

The Commissioner's motion to dismiss constitutes a factual attack and involves the interplay between several statutes.  In Social Security cases, the Court's jurisdiction is generally governed by 42 U.S.C. § 405.  Under section 405(g), a claimant must satisfy two jurisdictional prerequisites to obtain judicial review of a SSA decision: he must present a claim for benefits to the Commissioner, *Mathews v. Eldridge*, 424 U.S. 319, 328-29 (1976), and he must exhaust his administrative remedies (unless exhaustion has been waived), *Crayton v. Callahan*, 120 F.3d 1217, 1220 (11th Cir. 1997).  In order to satisfy the latter requirement, a claimant must "proceed[ ] through all three stages of the administrative appeals process," including *de novo* reconsideration by the SSA of its initial determination, a hearing before an ALJ, and discretionary review by the Appeals Council.  *Bowen v. City of New York*, 476 U.S. 467, 471-72, 482 (1986); *accord Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  Only after a claimant has completed these steps is the Commissioner's determination considered to be a "final decision" subject to judicial review in federal court.  20 C.F.R. § 416.1400(a)(5).

In addition to section 405(g), the Commissioner's motion implicates section 405(h).  That provision states, "No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under [28 U.S.C. § 1331 (for cases involving a federal question) or 28 U.S.C. § 1346 (for actions against

the United States)] to recover on any claim arising under this subchapter." 42 U.S.C.

§ 405(h).   Neither the United States Supreme Court nor the Eleventh Circuit has

decided whether section 405(h) bars jurisdiction when a claimant seeks mandamus

relief.   *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (declining to decide whether

section 405(h) bars mandamus jurisdiction over claims arising under the Social

Security Act); *Lifestar Ambulance Serv., Inc. v. U.S.*, 365 F.3d 1293, 1295 n.3 (11th Cir.

2004) (assuming without deciding that mandamus jurisdiction is not barred by section

405(h)); *Cash v. Barnhart*, 327 F.3d 1252, 1257-58 (11th Cir. 2003) (per curiam) (same).

Several lower courts, however, have found that mandamus jurisdiction may be found

in the Social Security context as long as the requirements of the Mandamus Act, 28

U.S.C. §1361, have been met.   *Loren v. Berryhill*, 2019 WL 4738146, at *1 (S.D. Fla.

Sept. 27, 2019); *Wood v. Comm'r of Soc. Sec.*, 2017 WL 11113418, at *1 (M.D. Fla. Mar.

31, 2017); *Dokic-Vukojevic v. Colvin*, 2015 WL 7566688, at *4 (S.D. Fla. Oct. 26, 2015),

*report and recommendation approved in part*, 2015 WL 7566533 (S.D. Fla. Nov. 24, 2015).

The Mandamus Act provides that the district court has original jurisdiction

over an action "to compel an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff."   28 U.S.C. § 1361.   While the

Mandamus Act empowers courts to direct federal governmental entities to act, such

relief is "an extraordinary remedy which should be utilized only in the clearest and

most compelling of cases."   *Carter v. Seamans,* 411 F.2d 767, 773 (5th Cir. 1969) (per

curiam).[3]  As a result, "[m]andamus relief is only appropriate when: (1) the plaintiff

has a clear right to the relief requested; (2) the defendant has a clear duty to act; and

(3) 'no other adequate remedy [is] available.'"  *Cash*, 327 F.3d at 1258 (quoting *Jones*

*v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)); *see also Ringer*, 466 U.S. at 616-17.

Indeed, in order "[t]o ensure mandamus relief remains an extraordinary form of relief

and not a strategy for avoiding administrative exhaustion, plaintiffs must clearly

demonstrate that they have no alternative means to obtain the relief they seek."

*Lifestar*, 365 F.3d at 1298 (citation omitted).  In the end, although a writ of mandamus

is a legal remedy, "it is largely controlled by equitable principles and its issuance is a

matter of judicial discretion."  *Cash,* 327 F.3d at 1257-58 (quoting *Carter*, 411 F.2d at

773).

III.

Applying the above legal framework here, I find that dismissal of this action is

warranted.  Assuming without deciding that mandamus jurisdiction is a viable avenue

in the Social Security context, Scott fails to establish that the requirements for such

"extraordinary relief" have been met in this case.

To begin, despite Scott's assertions to the contrary, his Petition fails to

demonstrate that he has a clear right to an ALJ hearing or that the Commissioner has

a clear duty to provide him with such a hearing at this point.  While Scott's frustration

at how his claim has proceeded is obvious, he fails to acknowledge that—on

---

[3] Decisions of the former Fifth Circuit issued prior to October 1, 1981, bind this Court.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981).

apparently more than one occasion—he has not adequately exhausted his administrative remedies. In fact, as the Court previously determined in *Scott I*, Scott prematurely filed suit in that action without adhering to the strictures of the administrative process. *Scott I* at (Doc. 19 at 12).

And, he has done so again here. As noted above, Scott sent, and the SSA received, a request for an ALJ hearing in October 2018. (Doc. 6 at 13-14). Although the SSA had not responded to Scott's hearing request by the time he filed his Petition, that fact does not lead to the conclusion that he now has a clear right to a hearing on his preferred timetable or that the Commissioner was obligated to act in any particular manner.[4]

Moreover, as the Commissioner sets forth in his motion, the SSA did, in fact, act on Scott's claim after he filed his Petition, reopening its prior overpayment decision and finding that Scott was entitled to back payments. (Doc. 16 at 5). Scott concedes as much in his response to the Commissioner's motion, stating, "Only after this action for [m]andumus was filed [ ] did the SSA finally admit that it's [sic] position was wrong." (Doc. 17 at 6). And, while he simultaneously asserts he will again request that the SSA grant him an ALJ hearing, *id.* at 2, Scott nonetheless asks the Court to

---

[4] This does not mean that the Commissioner has not acted sluggishly with respect to Scott's claim. In fact, it appears he has. *See* 28 U.S.C. § 405(b) (providing that after any unfavorable determination of disability, the claimant, on request, shall be entitled to "reasonable notice and opportunity for a hearing with respect to such decision"). That said, Scott does not present sufficient facts to show that this is the "clearest and most compelling of cases," *Carter*, 411 F.2d at 773, warranting the court to take the extraordinary step of ordering the SSA to proceed in the way he wishes.

order such relief.  Given these facts, there is simply no clear right or obligation to be enforced by the Court at this juncture.[5]  Thus, Scott fails to meet the first two prongs required for mandamus relief to lie.

In addition, for many of the same reasons, Scott does not show that he satisfies the third requirement for mandamus, i.e., that he has no alternative remedy.  To the contrary, it appears that the administrative process, although not progressing at the pace Scott desires, is nonetheless moving forward.  The Commissioner acted upon Scott's request to reconsider the overpayment decision, conducted a full audit, discovered its errors, and determined that Scott was entitled to repayment.  As of the SSA's October 21, 2019, reconsideration decision, Scott had sixty days to request an ALJ hearing.  (Doc. 16 at 6); *see also* (Doc. 16-2 at 3, 18-20).  Scott was required to avail himself of that opportunity under the applicable statutory and regulatory provisions highlighted above, and he does not demonstrate that this alternative to mandamus was unavailable to him.

In sum, like his previous effort to seek judicial intervention in *Scott I*, I find that Scott again comes to the Court without following the appropriate administrative protocols and without a proper basis for relief.  Scott would be well-served to remember that "[t]he remedy of mandamus is not 'a substitute for an appeal,'" *Wood*, 2017 WL 11113418, at *3 (quoting *Plekowski v. Ralston-Purina Co.*, 557 F.2d 1218, 1220

---

[5] Indeed, it is possible that Scott has received an ALJ hearing since this matter has been briefed, rendering the case moot.  Neither party has advised the Court of such an occurrence, however, and, as a result, I do not presume for purposes of this report and recommendation that an ALJ hearing has taken place.

10

(5th Cir. 1977)), and that he should hew to the requirements prescribed in the Social Security rules and regulations before seeking court action.

IV.

For the reasons outlined above, I recommend that the Court:

1.  Grant *Defendant's Motion to Dismiss Plaintiff's Petition for Writ of Mandamus* (Doc. 16); and

2.  Direct the Clerk of Court to terminate any pending motions and close the case.

Respectfully submitted this 4th day of June 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

11

Copies to:
Honorable James S. Moody, Jr., United States District Judge
Counsel of record